# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. DELGADILLO, | 1:08-CV-01291 LJO JMD HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES E. TILTON, | |
| Respondent. | OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Jose L. Delgadillo ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in custody pursuant to a 2005 jury verdict, finding Petitioner guilty of corporal injury upon a co-habitant (Cal. Penal Code § 273.5(a)), false imprisonment (Cal. Penal Code § 236), obstruction or severance of a telephone line (Cal. Penal Code § 591), and misdemeanor battery (Cal. Penal Code § 243).[1] (Answer at 1; Pet. at 2.) Petitioner entered a guilty plea for the charge of failing to register as a sex offender (Cal. Penal Code § 290(g)(2)) and admitted the truth of the allegation that Petitioner had a prior strike conviction (Cal. Penal Code § § 667(ac)-(j) and 1170.12(a)-(e)). Petitioner was sentenced to a term of nine years and four months, consisting of an eight year upper term for the corporal injury conviction and a consecutive term of sixteen months for failing to register as a sex offender.[2] (Answer at 1; Lod. Doc. 4 at 4.)

---

[1] The jury returned a not guilty verdict on the additional charges of attempted murder, rape, and criminal threats. The jury was unable to reach a verdict as to the charge of kidnaping. (Answer at 1; Lod. Doc. 4 at 3).

[2] All other terms are concurrent sentences. (Lod. Doc. 4 at 4).

1   Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District.
2  (*See* Lod. Doc. 1.)  The appellate court issued a reasoned opinion on May 18, 2007, affirming the
3  judgement in all respects with the exception of the misdemeanor battery conviction.  (*See* Lod. Doc.
4  4.)

5   Petitioner then filed a petition for review to the California Supreme Court, which the state
6  court granted.  (*See* Lod. Docs. 5, 6.)  On September 12, 2007, the California Supreme Court
7  subsequently ordered that "[i]n light of *People v. Black* (2007) 41 Cal.4th 799 and *People v.*
8  *Sandoval* (2007) 41 Cal.4th 825, review in the above-entitled matter is dismissed."  (Lod. Doc. 7).[3]

9   On August 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in the
10 Northern District of California.  (Court. Doc. 1.)  The case was transferred to this Court on
11 September 2, 2008.  (Court Doc. 7.)

12   On December 12, 2009, Respondent filed a response to the petition.  Petitioner did not file a
13 reply.

## **FACTUAL BACKGROUND**[4]

In June 2005, appellant and Mary S. were living together as boyfriend and girlfriend in the City of Shafter. Mary S. was still married to one Alberto Reyes, but she considered him her "ex-husband" because they were in the process of separating. At the time of trial, Mary S. and Reyes had called off their divorce.

On Father's Day, June 19, 2005, appellant returned home from work, checked the caller identification feature on their telephones, and discovered that Reyes had called the household. Appellant became upset and talked with Mary S. for an hour about Reyes's calling. Appellant tried to call Reyes that night and the next morning but could not reach him.

On Monday, June 20, 2005, appellant and Mary S. went to Reyes's residence. Reyes came to the door and appellant and Mary S. told him not to call her. When appellant and Mary S. returned home, appellant took the cordless handsets of their two telephones and threw them against the wall, disabling the instruments. Appellant then threatened to kill Mary S., Reyes, and himself. He threatened to kill Mary S. with

---

[3] Respondent admits that Petitioner has exhausted his states remedies and does not allege that Petitioner's claims are procedurally barred. (Answer at 2.)

[4] These facts are derived from the California Court of Appeal's opinion issued on May 18, 2007. (*See* Lod. Doc. 4.)  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004). Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has attached to the State court's factual findings.

some pruning shears she had stored by their washing machine. Appellant swore, yelled, and started a fire with some papers in the kitchen sink. Mary S. testified she took his statements seriously, was scared, and did not feel free to leave.

The couple left the house about an hour later. Appellant drove to Reyes's residence and got into a face-to-face shouting match with Reyes. Appellant and Mary S. next drove to the convenience store where appellant worked and appellant borrowed $100. Mary S. said she was not concerned at this point in their journey. Appellant told her he wanted to take her somewhere, got on a freeway, and drove to Lake Ming.

At Lake Ming, Mary S. stepped out of the passenger door and smoked. Appellant rummaged through the glove box and looked for Reyes's telephone number. Appellant said he had "better not find a phone number of Alberto's or else." Mary S. suggested they sit at a nearby picnic table. Appellant was angry, grabbed her by the shirt and hair, and pulled her back into the car. When she fell onto his lap, appellant punched her in the eye and then smothered her with his hands. Appellant screamed, "Now you want to die, bitch, you're going to die now." Mary S. was scared appellant would carry out his threat. Photos of Mary S. taken after the incident showed a bruise on her right arm and bruising and swelling on her right eye.

Appellant drove away from Lake Ming with Mary S. as his passenger and she was concerned that he would harm her. Appellant angrily locked her door and window and held her seatbelt when they came to stops. He sped and swerved the car and told Mary S. he could drive off of a cliff or smash her head in and kill her. Mary S. tried to calm appellant down by using her pet names for him and reassuring him that she did not love Reyes.

Appellant drove the car to Mojave even though Mary S. did not want to go there. He parked in front of the lobby of the Best Motel, told Mary S. he would watch her, and then went inside to register for a room. The registration took about 10 minutes. Appellant returned to the car, drove to a Taco Bell, and ordered food for both of them in the drive-through lane. They returned to the Best Motel, entered room 111, and ate the food.

Appellant lay on the bed and told Mary S. to lie next to him. She sat on the edge of the bed but said she was not ready to lie down. Appellant suddenly grabbed her, pulled her onto the bed, and straddled her body. She screamed loudly and tried to hit and kick appellant off of her. He responded by stuffing a washcloth in her mouth and inflicting a "busted" lip. Appellant then placed a pillow over Mary S.'s face and applied all of his weight on it until she started to pass out. Appellant then stopped, pushed her into the bathroom of the motel room, and told her to wash up. Mary S. looked in the mirror and saw blood and bruising.

Appellant next pushed Mary S. on the bed and asked whether she was thinking about her ex-husband. Mary S. thought appellant wanted sex and told him several times she did not want intercourse. Mary S. said she ultimately "play[ed] the part" and gave up resisting because she did not want appellant to hit her. She reclined passively and told appellant she loved him. Appellant penetrated her vagina and ejaculated. Mary S. said the sensation was the same as when they engaged in consensual sex. At one point, appellant expressed interest in anal sex but Mary S. declined and appellant did not pursue the topic further.

After engaging in intercourse, appellant told Mary S. to wash up. He filled the bathtub with water that was too hot for her but she still got in because she did not

want to get hit or killed. Appellant washed her and then took a shower himself. Appellant then reclined on the bed and watched a pornographic movie. He tied his leg to Mary S.'s with his belt. Mary S. lay on the bed while appellant watched the movie. Appellant made additional threats to kill Mary S., who was frightened. At one point, he looked at the ceiling and told Mary S. he was looking for a place to hang her.

The couple left the Best Motel between 6:30 a.m. and 7:00 a.m. the next day. Mary S. told appellant she felt ill. She said she was having trouble with her heart and with high blood pressure. She asked appellant to take her to Kern Medical Center (KMC). Appellant agreed to drive her to KMC. Along the way, they stopped at a busy gas station and appellant went inside the store to pay for fuel and beverages. Mary S. did not attempt to flee during their journey between Mojave and KMC because she was afraid appellant would catch her and beat her.

Mary S. said once she entered KMC and was alone with hospital personnel, she told them that appellant had kidnapped, raped, and attempted to kill her. She also said he kept her against her will. However, hospital personnel did not conduct a rape test on her. Mary S. believed they declined to conduct a test because she bathed. A few days after her visit to the hospital, she threw away the clothes she wore during her incident with appellant.

Mary S. spoke to Deputy Sheriff John Abbott at KMC and said she gave him a "full report." Deputy Abbott told her she would have to make a report with the Shafter Police Department. Shafter Police Officer Chris Jackson subsequently interviewed Mary S. on two occasions and spoke with her on several additional occasions. Mary S. told Officer Jackson that appellant forced her into the car, took her to Reyes's home, and then took her to Lake Ming, where he bruised her arm, shoulder, and eye. Mary S. also told Officer Jackson about the pruning shears. She mentioned that appellant looked at the motel room ceiling and said he was seeking to install a hook so he could hang her. Mary S. told Officer Jackson that appellant grabbed her and pulled her back into the car, that he attempted anal sex, and that he made her get into "extremely hot" bath water.

Officer Jackson also conducted a tape-recorded interview with appellant. The prosecution played the taped interview for the jury. The prosecution also lodged a transcript of the recording with the court. Appellant told Officer Jackson he became jealous over Mary S.'s contact with Alberto Reyes. Appellant said he suspected that Reyes had been calling Mary S. prior to Father's Day. Appellant admitted destroying one of their telephones out of jealousy over Reyes.

Appellant said he and Mary S. confronted Reyes twice at the latter's home. Appellant then drove Mary S. to Lake Ming so they could get some "air" and "calm down." He denied taking her to Lake Ming against her will. When they arrived at Lake Ming, Mary S. said she was tired of appellant bringing up the topic of Reyes. Appellant became concerned that she would start to scream, run away, and attract the attention of law enforcement. Appellant grabbed and stretched Mary S.'s sweater and pulled Mary S. into the car. Appellant said this caused bruises to her arm and eye.

Appellant and Mary S. spent the night in a Mojave motel because the car was acting up. They ate, had sex, and watched television. Appellant said they were "okay" at first. However, he brought up the topic of Reyes again and that caused them to argue. Appellant said Mary S. started screaming. He assumed she was tired of him bringing up the subject of Reyes. Appellant said he did not want Mary S. to attract attention so he put his hand over her mouth. His fingernail nicked her lip and caused it to bleed. Mary S. accused appellant of trying to kill her but he denied it.

   The following day, Mary S. complained she was ill and claimed she was having a heart attack. Appellant took her to KMC but suspected she said something about how he had treated her. Appellant said the hospital staff would not tell him whether Mary S. was okay and when she was coming out from treatment. Security people came up and sat in front of him. A deputy sheriff eventually appeared and questioned appellant and then Mary S. The deputy placed appellant under arrest. During their tape-recorded interview, appellant told Officer Jackson, "... I'm really sorry for what happened, you know."

*Defense*

   Tom Lee, manager of the Best Motel in Mojave, testified he was on duty the evening of June 20, 2005. He received no complaints about anything, including screams or loud noises. Lee said appellant and Mary S. were assigned to room 111 during their stay. The telephone in that room was functioning and the ice machine was located just outside the motel office, about 150 to 200 feet from room 111.

   Mercedes J. Bloomers, R.N., a supervising nurse at KMC, testified that a female patient can wash away semen by taking a bath or shower. However, that does not eliminate other information that can be gained from administration of a rape kit. Bloomers said it is up to law enforcement to request the administration of a rape kit upon a patient. She testified KMC personnel informed law enforcement about Mary S.'s allegations but law enforcement did not request a rape kit. Bloomers did not specifically recall Mary S. making an accusation of rape.

   Kern County Deputy Sheriff John Abbott said he went to KMC at 9:14 a.m. on June 21, 2005. Mary S. told him there was a struggle in a vehicle and she received minor injuries as a result. Deputy Abbott saw some light bruising on the corner of her right eye and to the inside of her right bicep. Mary S. told him that appellant kidnapped her from Shafter and then took her to Lake Ming and Mojave. She did not tell Abbott that appellant raped her. Abbott could not recall whether Mary S. said that appellant smothered her with a pillow, put a rag in her mouth, bound and gagged her, or threatened to kill her.

   Deputy Abbott said he did not ask for a rape examination because Mary S. did not allege rape. He said his investigation was limited to what had occurred at Lake Ming. Deputy Abbott notified the Shafter Police Department and advised them that a further investigation might be needed.

(Lod. Doc. 4, Opinion of the California Court of Appeal, Fifth Appellate District, at 5-10).

## DISCUSSION

**I.**   **Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by

1  the U.S. Constitution.  While Petitioner is currently incarcerated outside of California,[5] Petitioner's

2  custody arose from a conviction in the Kern County Superior Court.  (Pet. at 3).  As Kern County

3  falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's

4  application for writ of habeas corpus.  *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over

5  application for writ of habeas corpus to the district court where the petitioner is currently in custody

6  or the district court in which a State court convicted and sentenced Petitioner if the State "contains

7  two or more Federal judicial districts").

## II.   ADEPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997)(quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition since Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").  As a threshold matter, this Court must "first decide what

---

[5] Petitioner is current housed at Tallahatchie County Correctional Facility in Tutwiler, MS.  (Pet. at 2; Answer at 1).

constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

  Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation

of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. As the California Supreme Court's decision dismissing Petitioner's claims is ambiguous,[6] the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.  Review of Petitioner's Claims

Petitioner seemingly challenges the trial court's imposition of his upper term for injuring a co-habitant and consecutive sentence for failing to register as a sex offender.[7] (Pet. Ex. A.)

####   *A.  Imposition of Upper Term*

Petitioner contends that the trial court's imposition of the upper term violated his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[8]

---

[6] The California Supreme Court merely cites to two of its decision in dismissing the petition for review without comment on what grounds the court was dismissing the petition for. (Lod. Doc. 7.)

[7] It is unclear from the petition what exactly Petitioner is claiming as his claims are limited to Exhibit A. While Exhibit A obviously challenges Petitioner's sentence of nine years and four months, the document does not clearly lay out which grounds for relief this challenge is based upon. Rather, the document alludes briefly to several grounds. Thus, the Court's main focus are Petitioner's claims that were raised on appeal–namely a challenge to the upper term of eight years and the consecutive term of sixteen months.

[8] The United States Supreme Court has previously stated that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 246 n. 6) (1999). In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the Supreme Court recognized that "[t]he Fourteenth Amendment commands the same answer."

Petitioner's argument stems from the clearly established federal law derived from *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny. In *Apprendi*, the United States Supreme Court overturned a State sentencing scheme as violative of a criminal defendant's right to have a jury verdict based on proof beyond reasonable doubt. The sentencing scheme permitted a trial judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon a finding by a preponderance of the evidence that the defendant committed the crime with racial animus. *Id*. at 469. The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may impose after finding additional facts.

The United States Supreme Court subsequently found that the imposition of upper terms, as delineated in California's Determinate Sentencing Law, based on facts found by a judge violated a criminal defendant's constitutional rights. *See Cunningham v. California*, 549 U.S. 270, 293 (2007) (overruling *People v. Black*, 35 Cal.4th 1238 (2005) (hereinafter *Black I*). The *Cunningham* court noted that the middle term specified in California's statutes was the relevant statutory maximum for the purpose of applying *Blakely* and *Apprendi*. The high court thus concluded that the imposition of the upper term based solely upon a trial judge's fact finding violated the defendant's Sixth and Fourteenth Amendment rights because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." *Id.* at 274.

In rejecting Petitioner's claims, the California Court of Appeal noted that California's Determinate Sentencing Law had been found by the United States Supreme Court in *Cunningham* to violate a criminal defendant's Sixth and Fourteenth Amendment rights. (Lod. Doc. 4 at 25.) The appellate court went on to note that only one aggravating factor is required under California law to

authorize the upper term.[9] (Id). The appellate court thus concluded that:

> To the extent the court gave reasons, it did so in connection with ruling on appellant's motion to strike his prior strike conviction and to reduce certain counts to misdemeanors. As noted above, these rulings occurred immediately prior to the imposition of sentence. In rendering those rulings on appellant's motion, the court stated that (1) appellant had a prior conviction for the "very serious" crime of rape; (2) the nature of appellant's prior conviction and the circumstances of the present offenses demonstrated appellant's willingness to abuse women; and (3) appellant's current conviction for failure to register as a sex offender demonstrates his unwillingness to abide by the law. The trial court's conclusions were clearly predicated on jury findings made upon proof beyond a reasonable doubt. To paraphrase *Apprendi*, the facts increasing the penalty for appellant's crime beyond a prescribed statutory maximum had been submitted to a jury and proved beyond a reasonable doubt. ( *Apprendi*, *supra*, 530 U.S. at p. 490.)
> The trial court imposed an upper term based on judicially-found facts deemed constitutionally permissible under *Apprendi*, *Blakely*, and *Cunningham*.

(Lod. Doc. 4 at 25-26.)

Based on the foregoing, the California Court of Appeal's decision is not an objectively unreasonable application of clearly established federal law. *Apprendi* and its progeny clearly establish that *"other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). Here, the appellate court found that the trial court imposed the upper terms based on three aggravating factors, one of which was Petitioner's prior convictions.[10] The Court's review of the record does not reveal that this conclusion was an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d)(2). While the trial court did not expressly state its reasons for imposing the upper term, the Court finds the trial court relied on the same factors it espoused in denying Petitioner's motions. As noted by the appellate court, the trial

---

[9] The finding that only one aggravating factor is required for imposing the upper term was reiterated by the California Supreme Court in *People v. Black*, 41 Cal.4th 799, 805 (Cal. 2007) (hereinafter *Black II*). The Ninth Circuit has stated that this rule constitutes an interpretation of state law that a federal habeas court is bound to accept. *See Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008).

[10] To the extent Petitioner is challenging the use of a prior conviction that is relatively old, Petitioner's claim is unsupported by any Supreme Court precedents. Petitioner has failed to cite to any authority within the Ninth Circuit or other jurisdiction that would support such a proposition. Petitioner also alluded to the imposition of a more severe sentence based on his prior conviction as violative of his rights under the Double Jeopardy Clause. The Court rejects this argument. *See Witte v. United States*, 515 U.S. 389, 400 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as a 'stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'").

1  court explained its reasoning for denying Petitioner's motions, including its reliance on the serious
2  prior conviction, immediately prior to its pronouncement of the sentencing decision. (CT at 289-
3  293.)   The trial court then stated:

> The Court having considered those requests of counsel does make the following orders: Probation is denied for the reasons the offense herein reflected is offense of such serious nature that the conviction of the offense in count two is to the degree and extent seriousness that gran tof probation would be inappropriate response, and therefore, probation is denied.
> He is sentenced to the Department of Corrections as to count two for the upper term, which is doubled, pursuant to Section 667 E for the upper term of eight years.

(CT at 293.) Thus, it is clear that the trial court's reasoning for its sentencing decision was also based on the reasoning it used for denying the motions.

Additionally, even if the trial court had remained silent, Petitioner is not entitled to habeas corpus relief as this error is harmless. *See Washington v. Recuenco*, 548 U.S. 212, 220 (2006) (sentencing errors are subject to harmless error analysis); *see also Butler*, 528 F.3d at 648. The United States Supreme Court has substantially restricted a state prisoner's entitlement to federal habeas corpus relief by requiring a showing that the violation of a federally guaranteed right had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "Under that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Butler*, 528 F.3d at 648 (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).). "Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Butler*, 528 F.3d at 648 (citing *O'Neal*, 513 U.S. at 435). Furthermore, "the relevant question is not what the trial court *would* have done, but what it legally *could* have done." *Butler*, 528 F.3d at 648-649 (emphasis in original).  As previously stated, only one aggravating factor need to be proven for imposition of the upper term. *See Black II*, 41 Cal.4th at 806; *Butler*, 528 F.3d at 642-643. Here, it is undisputed that Petitioner has a prior conviction. Thus, a jury would have concluded beyond a reasonable doubt that there was at least one aggravating factor required to impose the upper term. Consequently, at the very least, the alleged error is harmless and cannot be a basis for Petitioner's habeas corpus relief.

### B.     *Imposition of Consecutive Sentence*

Petitioner seems to also be challenging the imposition of the sixteen month consecutive sentence the trial court imposed. Petitioner presented this claim to the Court of Appeal, which rejected the claim. The appellate court's decision relied on the California Supreme Court's decision in *Black I*'s holding that a jury trial is not required for imposition of a consecutive sentence. (Lod. Doc. 9 at 26). As noted by the Supreme Court recently in *Oregon v. Ice*, 129 S. Ct. 711, 718-719 (2009), the imposition of a consecutive sentence does not implicate the Sixth Amendment. Consequently, Petitioner cannot obtain habeas corpus relief on this ground as the imposition of consecutive sentences based on factors found by a judge does not violate Petitioner's Sixth Amendment right to a jury trial.

### RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     May 14, 2010**          **/s/ John M. Dixon**
                                UNITED STATES MAGISTRATE JUDGE